**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MERCIS B.V., | ) | |
| | ) | Case No. 24-cv-5853 |
| Plaintiff, | ) | |
| | ) | Judge Sara L. Ellis |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| THE INDIVIDUALS, CORPORATIONS, | ) | |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS AND UNINCORPORATED | ) | |
| ASSOCIATIONS IDENTIFIED ON SCHEDULE | ) | |
| A HERETO, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFF'S REPLY IN SUPPORT OF ENTRY OF A PRELIMINARY INJUNCTION
AGAINST DEFENDANTS**</u>

Plaintiff, MERCIS B.V. ("MIFFY" or "Plaintiff"), by its attorneys Hughes Socol Piers Resnick & Dym, Ltd., submits its Response to Defendants' Motion to Vacate the Preliminary Injunction ("Motion") against Defendant Nos. 139 "Jiangxi Qianhe Maternal And Child Products Co., Ltd.", 172 "Xiamen Packrich Imp. And Exp. Co., Ltd.", 177 "Yiwu Geofair Import & Export Co., Ltd." and 183 "Yiwu Speedbag Co., Ltd." (hereinafter "Defendants") thereof and in support states:

**I.      INTRODUCTION**

Defendants have been accused of infringing U.S. Trademark Registration Nos. 4,248,049; 5,663,554 and 5,706,346 for the "MIFFY" Design Marks and Copyright Registration No. VA0001054563 (collectively, the "MIFFY Design marks and Copyright") through Defendants' interactive commercial websites. As a result, Plaintiff is entitled to injunctive relief to prevent the continued infringement of its intellectual property and to seek statutory damages pursuant to 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(c) for the unlawful use of the MIFFY

Design Marks and Copyright by counterfeiters like Defendants, which are seeking to profit from the reputation and goodwill of the acclaimed MIFFY characters developed by Dick Bruna.

Additionally, Defendants' claims regarding this Court's jurisdiction over Defendants are addressed fully in Plaintiff's currently filed Response to Defendants' Motion to Dismiss. [Dkt. No. 66].

Furthermore, any request to lift the asset restraint is premature until Plaintiff has had an opportunity to conduct discovery to prevent the dissipation of assets.

Plaintiff has satisfied all of the necessary elements for entry of a preliminary injunction against Defendants and the preliminary injunction was properly entered against Defendants on August 14, 2024. [Dkt. Nos. 46, 47]. Defendants fail to demonstrate any circumstances which require this Court to vacate the properly entered preliminary injunction. As a result, Plaintiff respectfully requests this Court to deny Defendants' Motion to Vacate the Preliminary Injunction and to deny Defendants' request to release or modify the asset restraint currently in place.

## II.    STATEMENT OF FACTS

On July 11, 2024, Plaintiff filed a Complaint against multiple defendants, including Defendants alleging trademark infringement and counterfeiting (Count I); false designation of origin (Count II); copyright infringement (Count III) and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV). [Dkt. No. 1]. On the same day, Plaintiff filed a Motion for Entry of a Temporary Restraining Order ("TRO") and supporting Memorandum. [Dkt. Nos. 11, 12].

On July 18, 2024, this Court granted Plaintiff's Motion for a Entry of a TRO. [Dkt. Nos. 35, 36]. Plaintiff filed a Motion to Extend the TRO on July 25, 2024. [Dkt. No. 37]. On July 26,

2024, this Court granted Plaintiff's Motion to Extend the TRO for an additional fourteen (14) days, through August 15, 2024. [Dkt. No. 38].

On August 12, 2024, Plaintiff filed a Motion for Entry of a Preliminary Injunction and supporting Memorandum against multiple defendants, including Defendants. [Dkt. Nos. 41, 42]. Also on August 12, 2024, Plaintiff served Defendants with copies of the Summons, Complaint, TRO, Motion for Entry of a Preliminary Injunction and supporting Memorandum. [Dkt. No. 45]. On August 14, 2024, this Court granted Plaintiff's Motion for Entry of a Preliminary Injunction against Defendants. [Dkt. Nos. 46, 47].

On August 30, 2024, Counsel for Defendants filed an Appearance and unopposed Motion for an Extension of Time to File an Answer [Dkt. Nos. 48, 49] which was granted on September 4, 2024, extending the deadline to file a responsive pleading to September 16, 2024. [Dkt. No. 51]. On September 11, 2024, Plaintiff filed a Motion for Entry of Default and Default Judgment and supporting Memorandum. [Dkt. Nos. 55, 56]. On September 16, 2024, Defendants filed a Motion to Dismiss [Dkt. No. 59] and a Motion to Vacate the Preliminary Injunction. [Dkt. Nos. 59, 60]. On September 17, 2024, this Court granted Plaintiff's Motion for Entry of Default and Default Judgment and set a briefing schedule on Defendants' Motion to Dismiss [Dkt. No. 59] and Motion to Vacate the Preliminary Injunction [Dkt. No. 60] whereby Plaintiff's Responses are due by October 18, 2024, and Defendants' Replies are due by November 1, 2024. [Dkt. No. 61].

## III.   STATUTORY AUTHORITY

A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that

it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

## IV.    ARGUMENT

### a.    Plaintiff Has Satisfied the Standards for a Preliminary Injunction

Plaintiff has satisfied all of the necessary elements for entry of a preliminary injunction against Defendants and therefore the preliminary injunction should remain in place. A preliminary injunction may be issued upon showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in

4

Plaintiff's favor; and (4) the public interest will not be disserved by the injunction." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996).

### i. Plaintiff is Likely to Succeed on its Trademark Infringement and Counterfeiting Claim

The preliminary injunction previously entered against Defendants should remain in place because Plaintiff has properly demonstrated a likelihood of success on its trademark infringement and counterfeiting claims against Defendants. Defendants are liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademarks; and (3) Defendants' use of the trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005). Plaintiff satisfied all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim against Defendants and therefore the preliminary injunction properly entered against Defendants should stand.

Regarding the first two elements, Plaintiff's MIFFY Design marks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. Plaintiff is the owner of U.S. Trademark Registration Nos. 4,248,049; 5,663,554 and 5,706,346 for the "MIFFY" Design marks. *See* Exhibit A, Declaration of Frank Padberg and ⁋ 5 and Group Exhibit B – MIFFY Trademark Registrations. The Trademarks have been continuously used and never abandoned. *See* Exhibit A, ¶ 7. The MIFFY Trademark

registrations constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the MIFFY Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use the MIFFY Design marks, nor are Defendants authorized retailers of genuine MIFFY Products. *Id.* at ¶ 11.

With regard to the third factor, Defendants' use of Plaintiff's registered MIFFY Design marks have confused consumers regarding the authenticity of the products being sold. The sale of Counterfeit MIFFY Products using the MIFFY Design marks causes consumer confusion in the marketplace, which weakens Plaintiff's brand recognition and reputation. *Id.* at ¶ 20. When counterfeit products use the MIFFY Design marks, Plaintiff's products and brand become associated with these inferior counterfeit products which are not subject to same quality control standards as products used with the MIFFY Design marks. *Id.* at ¶ 19. Consumers attributing these inferior quality products with Plaintiff will result in increased skepticism and hesitance by consumers to purchase genuine MIFFY Products in the future, resulting in a loss of sales and undermining of Plaintiff's reputation and goodwill. *Id.* at ¶ 20.

Defendants' use of the MIFFY Design marks on the products listed in the following comparison chart has caused confusion in the marketplace and leads consumers to believe that the products being marketed and sold by Defendants belong to or are approved by Plaintiff. As demonstrated below, there is little to no difference between the unique design of the facial features and ears of the rabbit used by the Defendants and Plaintiff's registered Design marks. *Compare* Group Exhibit B – MIFFY Design mark Registrations and Group Exhibit C – Evidence of Infringement.

| Plaintiff's Design Marks | Defendants' Products |
|---|---|
| Reg. Nos. 4,248,049 and 5,706,346  | No. 139 "Jiangxi Qianhe Maternal And Child Products Co., Ltd."  |
| Reg. No. 5,663,554  | No. 172 "Xiamen Packrich Imp. And Exp. Co., Ltd."  |
| Reg. No. 5,663,554  | No. 177 "Yiwu Geofair Import & Export Co., Ltd."  |

| Reg. No. 5,663,554 | No. 183 "Yiwu Speedbag Co., Ltd." |
|---|---|
|  |  |

A side-by-side comparison of Defendants' products with Plaintiff's MIFFY Design marks demonstrates that consumers would be reasonably confused whether Defendants' products are made, endorsed or sponsored by Plaintiff.

The head of the bunny on the diapers for Defendant No. 139 "Jiangxi Qianhe Maternal And Child Products Co., Ltd." is nearly identical to the adjacent Design mark of Plaintiff, as both have oval-shaped heads, vertical ears that are rounded at the top, large round black circles for eyes and an "x" for a mouth. Additionally, Design mark No. 4,248,049 is registered for Classes 22 and 39, which includes clothing for babies, namely underwear. *See* Exhibit B – Trademark Registrations. Mark No. 5.706,346 is registered for Class 5, which includes disposable diapers. *Id.* Defendant No. 139 "Jiangxi Qianhe Maternal And Child Products Co., Ltd." sold "cotton washable baby diapers". *See* Group Exhibit C – Evidence of Infringement.

The heads of the bunnies on the handbags of Defendant Nos. 172 "Xiamen Packrich Imp. And Exp. Co., Ltd.", 177 "Yiwu Geofair Import & Export Co., Ltd." and 183 "Yiwu Speedbag Co., Ltd." are nearly identical to Plaintiff's Design mark as they all include bunnies with oval-shaped heads, vertical ears that are rounded at the top, large round black circles for eyes and an "x" for a mouth. Additionally, Design mark No. 5,663,554 is registered for Class 18, which covers weekend bags, travel bags, overnight bags, beach bags, textile shopping bags, tote bags and shoulder bags, which are the products at issue for Defendants.

As a result, Plaintiff has demonstrated a likelihood of confusion between Defendants' counterfeit products and those sold by Plaintiff and therefore Defendant's Motion to Vacate the Preliminary Injunction should be denied.

### ii. Plaintiff Is Likely to Succeed on Its Copyright Infringement Claim

The preliminary injunction properly entered against Defendants should remain in place because Plaintiff has demonstrated that it is likely to succeed on its copyright infringement claim. To prevail on a claim of copyright infringement, under 17 U.S.C. § 501, Plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization …, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Plaintiff is the owner of the MIFFY registered copyright. *See* Exhibit A – Declaration of Frank Padberg at ₱ 5 and in particular, U.S. Copyright Registration VA0001054563 "MIFFY". *See* Exhibit D – Copyright Registration ("MIFFY")

The infringing products being marketed and sold by Defendants are nearly identical to Plaintiff's copyright deposit. See the below comparisons of the products being marketed for sale on Defendant's website. *See* Group Exhibit C – Evidence of Infringement and the copyright deposit for Copyright Registrations VA0001054563 "MIFFY". *See* Exhibit D – Copyright Registration ("MIFFY").

| Copyright Reg. No. VA0001054563 | No. 139 "Jiangxi Qianhe Maternal And Child Products Co., Ltd." |
|---|---|
|  |  |
| Copyright Reg. No. VA0001054563 | No. 172 "Xiamen Packrich Imp. And Exp. Co., Ltd." |
|  |  |
| Copyright Reg. No. VA0001054563 | No. 177 "Yiwu Geofair Import & Export Co., Ltd." |
|  |  |

| Copyright Reg. No. VA0001054563 | No. 183 "Yiwu Speedbag Co., Ltd." |
|---|---|
|  |  |

As can be seen in the comparison chart above, the head of the MIFFY bunny as depicted in the washable baby diapers for Defendant No. No. 139 "Jiangxi Qianhe Maternal And Child Products Co., Ltd." is nearly identical to Plaintiff's Copyright Registration. The heads of both bunnies are a distinct oval shape with extending vertical ears, two large black dots for eyes and an "x" for a mouth.

The similarities are also nearly identical between the handbags that were sold by Defendant Nos. 172 "Xiamen Packrich Imp. And Exp. Co., Ltd.", 177 "Yiwu Geofair Import & Export Co., Ltd." and 183 "Yiwu Speedbag Co., Ltd." and Plaintiff's Copyright Registration. The heads of both bunnies are oval, have vertically extending ears, have large dots for eye and a distinct "x" for a mouth.

As a result, Defendants' products are derived from the distinctive creative content included in Plaintiff's Copyright Registration and therefore the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of its claim for copyright infringement.

11

### iii. There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Without the entry of a preliminary injunction against Defendants, Plaintiff will suffer irreparable harm. Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants are willful counterfeiters and, therefore, should be given little equitable consideration. Defendants' unauthorized use of the MIFFY Design marks and Copyright registration deprives Plaintiff of the ability to control the creative content protected by its copyright and devalues the MIFFY brand by associating it with inferior quality goods. *See* Exhibit A at ⁋ 20. Furthermore, Defendants' unauthorized use of the MIFFY Design marks and Copyright undermines the value of the work by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to develop additional markets for his products. *Id.* at ⁋ 21. These are recognized as irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.,* 518 F.Supp. 2d 1197, 1219 (C.D. Cal. 2007). Defendants' unauthorized use of the MIFFY Design marks and Copyright registration irreparably harms Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *Id.* at ⁋⁋ 18-21.

12

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss, or damage if the preliminary injunction properly entered against Defendants is vacated. As a result, the properly entered preliminary injunction against Defendants should stand.

### iv. The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted*,* then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

"When considering the balancing of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.,* 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright context, since Defendants

13

"cannot complain" of being forced to cease their infringement. *Warner Bros. Entm't. Inc. v. WTV Sys.,* 824 F.Supp. 2d 1003, 1014-15 (C.D. Cal. 2011).

Thus, the balance of equities tips decisively in Plaintiff's favor and equity requires that Defendants are ordered to cease its unlawful conduct and as a result, the properly entered preliminary injunction should not be vacated.

### v. Issuance of the Injunction is in the Public Interest

Entry of a preliminary injunction is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark and copyright law. The public is currently under the false impression that Defendants are operating their Internet Stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976).

In this case, the injury to the public is significant, and the injunctive relief granted to Plaintiff is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods offered by Defendants, or as to the identity of the owner of the Trademarks or Copyright used in connection with those goods. Unless Defendants' unauthorized use of

Plaintiff's Design marks and Copyright are enjoined, the public will continue to be confused and misled by Defendants' conduct. As a result, Defendants' Motion should be denied.

### b. A Reduction of The Asset Restraint Is Not Appropriate

Defendants' request for an asset restraint reduction should be denied to prevent the dissipation of assets until a final accounting can be performed.

#### i. An Asset Restraint Is Appropriate To Prevent the Dissipation of Assets Since Defendants Are Located Outside of the U.S. and the Balance of Harms Continues to Favor Plaintiff

As this Court correctly found in entering the TRO [Dkt. No. 36] and preliminary injunction [Dkt. No. 47], the balance of harms continues to favor Plaintiff. Defendants are likely to swiftly move its assets outside of the United States if the asset restraint is lifted. Without an asset restraint in place, Plaintiff would be prevented from realizing its right to statutory damages and/or an equitable accounting of Defendants' profits and, as a result, would be irreparably harmed. In contrast, the potential harm to Defendants is purely monetary, and only for a finite period of time. Defendants do not have a legitimate interest in profits from the sale of counterfeit products. Likewise, as willful counterfeiters, Defendants should be given little equitable consideration. In assessing the risk of irreparable harm to Defendants, the Court should "exclude[] any burden it voluntarily assumed by proceeding in the face of a known risk." *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 U.S. Dist. LEXIS 144660, at *28.

Accordingly, the balance of harms continues to favor Plaintiff with respect to the asset restraint and it should continue to remain in place.

### c. It Is Premature for This Court to Dissolve or Reduce the Asset Restraint Without Any Documentary Proof or Discovery

At a minimum, it would be premature for this Court to consider Defendants' request to reduce the asset restraint until discovery has taken place. Defendants are willful counterfeiters

that, by their very nature, are out to deceive. *Klipsch Group, Inc. v. Big Box Store Ltd.* is a good example illustrating that Defendants' representation of minimal counterfeit sales is untrustworthy. In *Klipsch Group*, an asset restraint was reduced based on the defendant's showing that there were minimal sales of accused goods sold into the U.S. *Klipsch Group, Inc. v. Big Box Store Ltd.*, No. 12-cv-6283 (S.D.N.Y.) [Dkt. No. 31]. However, the Court in *Klipsch Group* later found that the defendant had engaged in extensive willful spoliation of evidence, including erasure of electronically stored data and destruction of electronic files. *Id.* at [Dkt. No. 213]. In reducing the asset restraint, the Court relied on spreadsheets created by defendant showing minimal sales of counterfeit products and the declaration of the defendant's CEO. *Id.* at *7-8 (S.D.N.Y. Oct. 11, 2012). Defendant later produced purchase orders that were not reflected in the spreadsheets and defendant continued to sell counterfeit products after previously represented dates. *Id.* at [Dkt. No. 250]. As a result, the Court increased the asset restraint to $5,000,000. *Id.* at [Dkt. No. 213]. As *Klipsch Group* illustrates, it is premature for this Court to reduce the asset restraint and this Court should not credit any sales representations made by Defendants without documentary proof or discovery.

The present case is similar to 24-cv-2227 *Art Ask Agency v. The Partnerships et al.* (J., Tharp) In that case, Defendant No. 57 "FUNSHOWCASE" was accused of infringing U.S. Copyright Registration VA 2-271-518 "Woodland Guardian", by selling products that were nearly indistinguishable from Plaintiff's copyrighted image. Defendant unsuccessfully argued against the entry of a preliminary injunction and the imposition of an asset restraint because defendant claimed that it made a de minimus number of sales of the infringing product. (24-cv-2227, *Art Ask Agency v. The Partnerships et al.,*[Dkt. No. 52]. Judge Tharp, entered a preliminary injunction against defendant and denied defendant's request to lift the asset restraint

because defendant "…does not offer any evidence (e.g., an affidavit) to support its contention, and, in any event, the plaintiff would be entitled to statutory damages from the defendant that exceed $750 should it prevail on the merits." *Id.,* [Dkt. No. 57].

As in the present case, the products being sold by Defendants bear a nearly identical resemblance to Plaintiff's Design marks and Copyright. The amount of statutory damages provided by 17 U.S.C. § 504(c)(2) in situations where " … the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). In situations where the infringement is not considered to be "willful", 17 U.S.C. § 504(c)(1) provides for statutory damages " … in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). As can be determined by the comparison of Defendants' infringing products with Plaintiff's copyright deposits, Defendants' products are nearly indistinguishable, so therefore the infringement would be considered willful and any asset restraint on Defendants' Internet Stores should not be less than $150,000.

As a result, Plaintiff requests this Court to maintain the asset restraint on Defendants' accounts and defer ruling on Defendants' request to reduce the asset restraint until Plaintiff can conduct discovery and a hearing on Defendants' request.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendants' Motion to Vacate the Preliminary Injunction and deny Defendants' request to reduce the asset restraint and for any additional relief this Court deems appropriate.

Respectfully submitted,

Dated: October 18, 2024

By:     s/Michael A. Hierl
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com
wkalbac@hsplegal.com
Attorneys for Plaintiff
MERCIS B.V.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, served by publication and email to the Defendants identified in Schedule A and served on all counsel of record and interested parties via the CM/ECF system on October 18, 2024.

*/s/ Michael A. Hierl*