eUNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERCIS, B.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 5853 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| THE INDIVIDUALS, CORPORATIONS, | ) | |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS, AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON | ) | |
| SCHEDULE A HERETO, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Mercis, B.V. ("Mercis"), which manages MIFFY merchandise, sued 202 entities

for infringing on its federally registered copyright and trademarks by selling counterfeit

products. The Court granted Mercis' motion for a temporary restraining order ("TRO") on July

18, 2024, Doc. 36, and entered a preliminary injunction order on August 14, 2024, Doc. 47.

Four defendants—Jiangxi Qianhe Maternal and Child Products Co., Ltd. (#139), Xiamen

Packrich Imp. And Exp. Co., Ltd. (#172), Yiwu Geofair Import & Export Co., Ltd. (#177), and

Yiwu Speedbag Co., Ltd. (#183) (collectively, the "Moving Defendants")—move to dismiss

Mercis' claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2) or, alternatively, for failure to state a claim pursuant to Rule 12(b)(6), Doc.

59. The Moving Defendants also move to vacate the preliminary injunction or, alternatively, lift

the asset restraint, Doc. 60. The Court finds that Mercis has made out a *prima facie* case of

jurisdiction over the Moving Defendants in Illinois. However, the Court grants the Moving

Defendants' motion to dismiss because Mercis has not plausibly alleged a likelihood of

confusion nor substantial similarity.  Because the Court dismisses all claims against the Moving

Defendants, the Court grants the Moving Defendants' motion to vacate the preliminary

injunction.

## BACKGROUND[1]

Mercis, a Dutch company, is the registered owner of the MIFFY trademarks (the

"MIFFY Trademarks"), Reg. Nos. 2,210,029; 2,482,597; 4,248,049; 5,516,174; 5,652,014;

5,663,554; 5,663,610; 5,706,279; 5,706,346; 5,706,199 and 6,727,656, and the MIFFY copyright

(the "MIFFY Copyright"), Reg. No. VA0001054563.  The MIFFY character was "born" in 1955

and is Dick Bruna's best known and most popular character.  Mercis has featured the MIFFY

character in picture books, television series, a movie, and merchandising items worldwide.  The

MIFFY Trademarks and Copyright have been the subject of substantial and continuous

marketing and promotion by Mercis.

The Moving Defendants are business entities that conduct business solely on

www.Alibaba.com.  Among other products, the Moving Defendants have offered for sale tote

bags and reusable diapers that bear counterfeits of the MIFFY Trademarks and Copyright (the

"Counterfeit Products").  The Moving Defendants have never owned, leased, or utilized an office

in Illinois, have no agents, employees, or contractors in Illinois, and have never advertised, held

a telephone listing, or maintained bank accounts in Illinois.  The Moving Defendants have never

---

[1] In addressing personal jurisdiction, the Court is not limited to the pleadings.  *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  Therefore, the Court draws the facts from the complaint and the additional documents submitted by the parties for purposes of resolving the Moving Defendants' Rule 12(b)(2) challenge.  The Court resolves all factual conflicts and draws all reasonable inferences in Mercis' favor.  *Id.* at 782–83.  In addressing the Moving Defendants' Rule 12(b)(6) challenge, the Court takes the facts in the background section from the complaint and exhibits attached thereto and presumes them to be true.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

shipped the Counterfeit Products to Illinois or anywhere else in the United States, nor have they specifically marketed, advertised, or otherwise promoted the Counterfeit Products in Illinois.

Mercis' investigator placed orders for the Counterfeit Products on June 13 and 20, 2024 using an Illinois address as the shipping address. The investigator received an order number and confirmation of payment on July 4 and 8, 2024. As of October 2024, Mercis had not yet received the Counterfeit Products.

## ANALYSIS

### I.     Personal Jurisdiction

The Moving Defendants contend that the Court lacks personal jurisdiction over them. When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, as it does here, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id*. at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-*

*Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

In federal question cases, the Court may exercise personal jurisdiction over a defendant only if "federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Neither the Lanham Act nor the Copyright Act authorizes nationwide service of process, and so the Court may exercise jurisdiction over the Moving Defendants only if authorized both by the United States Constitution and Illinois law. *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 902 (N.D. Ill. 2015). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction on any basis permitted by the Illinois and United States constitutions. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing 735 Ill. Comp. Stat. 5/2-209(c)). This standard effectively merges the federal constitutional and state statutory inquiries. *N. Grain Mktg.*, 743 F.3d at 492. Accordingly, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010).

The Due Process Clause of the United States Constitution permits a court to exercise jurisdiction when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). And importantly, "the question of personal

4

jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023); *see also Purdue*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity").

Personal jurisdiction may be either general or specific.[2]  *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Neither side argues that the Court can exercise general jurisdiction over the Moving Defendants, so the Court focuses on specific jurisdiction.  Specific jurisdiction is "case-linked." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "[T]he suit must arise out of or relate to the defendant's contacts with the forum," meaning "there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id*. (quoting *Goodyear*, 564 U.S. at 919).  Here, to establish minimum contacts that create specific personal jurisdiction, the Moving Defendants must have purposefully directed their activities at Illinois or purposefully availed themselves of the privilege of conducting business in Illinois, and Mercis' alleged injury must arise out of or relate to the Moving Defendants' forum-related activities.  *See Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

Mercis claims that these requirements are satisfied here.  In its complaint, Mercis alleged that the Moving Defendants hold themselves out as willing and able to sell the Counterfeit Products to Illinois and that, on information and belief, had sold the Counterfeit Products to

---

[2] The Supreme Court has recently emphasized that a third method of establishing personal jurisdiction exists where a defendant has consented to suit in the forum.  *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023).  Because Mercis does not argue that the Moving Defendants consented to suit in Illinois, the Court need not address the implications of *Mallory* further.

customers in Illinois.  Further, Mercis produced evidence that it purchased Counterfeit Products for shipment to Illinois, though the orders have yet to arrive.  The Moving Defendants argue that because they never actually shipped the Counterfeit Products to Mercis in Illinois, however, this Court does not have jurisdiction over it.

In *NBA Properties, Inc. v. HANWJH*, the Seventh Circuit confronted the question of what sufficed to subject foreign e-commerce stores like the Moving Defendants to personal jurisdiction in Illinois with respect to claims of online counterfeiting.  46 F.4th 614 (7th Cir. 2022).  The Seventh Circuit found purposeful direction at Illinois where the defendant established an online storefront, indicated a willingness to sell to Illinois, and fulfilled an order by "intentionally shipping an infringing product to the customer's designated Illinois address." *Id.* at 624.  The court refused to require more than a single sale of the allegedly infringing product to Illinois and further rejected the defendant's argument that a test sale should not suffice because it amounted to an effort by the plaintiff to manufacture jurisdiction, noting that "what matters is [the defendant's] structuring of its own activities so as to target the Illinois market," not the plaintiff's motivations in making the purchase.  *Id.* at 624–25.

Here, Mercis has presented evidence that its investigator placed four orders for the Counterfeit Products in U.S. dollars for shipment to an Illinois address, receiving order numbers and payment confirmations thereafter.  The Moving Defendants presented no evidence to refute receipt of these orders and payments.  Though the Moving Defendants deny shipping the Counterfeit Products to Illinois, they accepted payment in U.S. dollars from Mercis' investigator and agreed to ship the Counterfeit Products to an Illinois address.  The fact that the Moving Defendants have not yet shipped the Counterfeit Products does not allow them to avoid jurisdiction when they clearly structured their activities to accept orders from and ship to Illinois.

Taken together, then, the Court concludes that Mercis has sufficiently demonstrated that the Moving Defendants purposefully directed their activities at Illinois. *See NBA Props.*, 46 F.4th at 625 ("Here, HANWJH shipped a product to the forum only after it had structured its sales activity in such a manner as to invite orders from Illinois and developed the capacity to fill them. It cannot now point to its 'customers in Illinois and tell us, It was all their idea.'" (quoting *uBID, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010)).

The Court also has no issue finding the remaining requirements for personal jurisdiction met. The contacts at issue clearly relate to this suit. *See id.* ("This requirement is met when direct sales from the defendant in the forum state involve the infringing product."). And while the Moving Defendants are foreign entities, courts have found "no unfairness in making a seller defend a suit in a state where it structures its business to 'easily serve the state's consumers.'" *Id.* at 627 (quoting *Curry*, 949 F.3d at 402). Here, the Moving Defendants have done just that, taking steps to make their products, including the Counterfeit Products at issue in this case, available to Illinois customers. Therefore, the Court finds it does not offend traditional notions of fair play and substantial justice for the Moving Defendants to defend against Mercis' claims in this forum. *See uBID, Inc.*, 623 F.3d at 433 ("There is no unfairness in requiring GoDaddy to defend that lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much."); *Hemi*, 622 F.3d at 760 ("Hemi wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure. There is nothing constitutionally unfair about allowing Illinois, a state with which Hemi has had sufficient minimum contacts, to exercise personal jurisdiction over Hemi.").

In summary, the Court finds that Mercis has established a *prima facie* case of personal jurisdiction over the Moving Defendants. The Moving Defendants structured their activities to

target United States and Illinois consumers by accepting payment in U.S. dollars, and they accepted the test orders with an Illinois shipping address. Therefore, the Court moves on to the Moving Defendants' remaining challenges.

## II.    Sufficiency of the Allegations

Next, the Court turns to the Moving Defendants' argument that the complaint fails to state a claim against them. A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### A.    Trademark, False Designation of Origin, and Deceptive Trade Practices Claims (Counts I, II, and IV)

Mercis brings a claim for trademark infringement and counterfeiting under 15 U.S.C. § 1114. Under the Lanham Act, a defendant is liable for trademark infringement if the defendant, without the trademark registrant's consent:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered trademark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a); *Desmond v. Chi. Boxed Beef Distribs., Inc.*, 921 F. Supp. 2d 872, 879–80 (N.D. Ill. 2013). Counterfeiting is a particular type of trademark infringement under § 1114(1)(a) where the defendant uses "a spurious mark [that] is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127 (defining "counterfeit"); *N. Am. Van Lines, Inc. v. N. Am. Moving & Storage, Inc.*, No. 1:18-CV-196, 2020 WL 703178, at *3–4 (N.D. Ind. Feb. 10, 2020) ("Trademark infringement, including counterfeiting, is prohibited under 15 U.S.C. § 1114[(1)](a) . . . . However, not all trademark infringement is counterfeiting.").

Mercis also brings claims for false designation of origin under 15 U.S.C. § 1125(a) and deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq.* Though the Moving Defendants do not move explicitly to dismiss the false designation of origin or deceptive trade practices claims, a plaintiff must show the same elements as the trademark infringement claim to prevail at the motion to dismiss stage, and so the Court analyzes the three claims together. *See Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (analyzing trademark infringement and false designation of origin claims together); *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 523 (7th Cir. 2012) (IUDTPA is "a statute generally thought indistinguishable from the Lanham Act except of course in its geographical scope"); *Monster Energy Co. v. Zheng Peng*, No. 17-cv-414, 2017 WL 4772769, at *3 (N.D. Ill. Oct. 23, 2017) (false designation of origin and IUDTPA claims "involve the same elements").

To prevail on their trademark, false designation of origin, and deceptive trade practices claims, Mercis must demonstrate that the Moving Defendants' use of a protectable mark "is likely to cause confusion among customers." *Phoenix Ent.*, 829 F.3d at 822; *Packman v. Chi.*

9

*Tribune Co.*, 267 F.3d 628, 638 & n.8 (7th Cir. 2001). Mercis need not prove likelihood of

confusion at this stage of the litigation, but it still must plead allegations that make it plausible

that such likelihood of confusion exists. *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763

F.3d 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like

any other allegations in any other suit, cannot save a claim if they are implausible."); *Top*

*Tobacco v. Fantasia Distrib. Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015) ("[T]his Court's role

at the motion to dismiss stage 'is limited to assessing whether [Plaintiffs have] pleaded facts that

plausibly could result in a successful outcome on the likelihood of confusion element of [their]

claim." (alterations in original) (citation omitted)). The Moving Defendants argue that Mercis'

complaint fails to plausibly allege likelihood of confusion.

  In considering the plausibility of Mercis' trademark, false designation of origin, and

deceptive trade practices claims, the Court employs the Seventh Circuit's seven-factor test for

determining likelihood of confusion. *E.g.*, *Fortres Grand*, 763 F.3d at 701–02; *Mighty Deer*

*Lick, Inc. v. Morton Salt, Inc.*, No. 17-cv-05875, 2020 WL 635904, at *6–7 (N.D. Ill. Feb. 11,

2020) (using the likelihood of confusion factors to address the defendant's argument on a motion

to dismiss that the plaintiff did not allege likelihood of confusion); *Mon Aimee Chocolat, Inc. v.*

*Tushiya LLC*, No. 15 C 4235, 2015 WL 6407758, at *5–6 (N.D. Ill. Oct. 22, 2015) (same); *Top*

*Tobacco*, 101 F. Supp. 3d at 789–92 (same); *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d

1005, 1013, 1015–18 (N.D. Ill. 2014) (same). The Seventh Circuit "uses the following seven

factors to determine [ ] likelihood of confusion: (1) the similarity between the marks in

appearance and suggestion; (2) the similarity of the products; (3) the area and manner of

concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the

plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to

'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented," but the Seventh Circuit has recognized that the marks' similarity, the defendant's intent, and actual confusion "are especially important." *Id.*; *Packman*, 267 F.3d at 643. With these factors in mind, the Court now turns to Mercis' complaint.

   *Factor 1*: With respect to the marks' similarity, the test is "whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Sorensen*, 792 F.3d at 726 (citation omitted). "The court should therefore consider whether the customer would believe that the trademark owner sponsored, endorsed, or was otherwise affiliated with the product." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 930 (7th Cir. 2008) (citation omitted) (internal quotation marks omitted).

   Mercis' complaint attaches images of the MIFFY Trademarks and the Moving Defendants' motion to dismiss embedded images of the Counterfeit Products, as they were found on the Moving Defendants' online marketplace accounts.[3] Below are images of one of the MIFFY Trademarks, No. 5,663,554, and the Counterfeit Products:

---

[3] Because Mercis did not include information specific to the Moving Defendants in its complaint (i.e., links to or screenshots of the Moving Defendants' Counterfeit Products), the Court questions whether Mercis adequately pleaded any of its four claims. However, because the Moving Defendants do not raise this argument, the Court considers the screenshots of the Counterfeit Products included in the Moving Defendants' motion to dismiss in resolving their Rule 12(b)(6) challenge. The Court places Mercis on notice that it should provide more specific details regarding each named defendant's allegedly infringing products in future pleadings.

| **MIFFY Trademark** | **Counterfeit Products** |
|---|---|
|  |  |



Doc. 1-1 at 9; Doc. 59-1 at 10–11.  The Moving Defendants argue that differences in the bunnies' mouths, ears, and heads render the marks dissimilar.  Doc. 59-1 at 13-14.  However, a jury viewing these marks could plausibly find that the marks are similar and likely to make a consumer associate the product offered for sale by the Moving Defendants with the source of the MIFFY Trademarks.  Thus, this factor weighs in favor of Mercis.

*Factor 2*: For similarity between products, "courts ask 'whether the products are the kind the public attributes to a single source.'"  *KJ Korea*, 66 F. Supp. 3d at 1015 (citation omitted).  The Moving Defendants argue that Mercis has failed to allege that it sells products like the Counterfeit Products.  Doc. 59-1 at 14.  Mercis does not address this point in its response, though the complaint alleges generally that the "MIFFY character's popularity has led to a wide range of merchandising items such as clothes, toys, stationery and household items featuring the character."  Doc. 1 ¶ 7.  Also, Mercis registered the MIFFY Trademark for Class 18, which covers weekend, travel, overnight, beach, tote, and shoulder bags, Class 24, which covers textiles

12

and textile goods, and Class 25, which covers clothing. Doc. 1-1 at 10. However, without specific products to compare, the Court finds that this factor does not support a likelihood of confusion.

*Factor 3*: With respect to the area and manner of concurrent use, the Court asks "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *KJ Korea*, 66 F. Supp. 3d at 1016 (citation omitted). To answer this question, the Court considers the "relative geographical distribution areas, evidence of direct competition between the products, whether products are sold to consumers in the same type of store or similar section of a particular store, and whether the product is sold through the same marketing channels." *Top Tobacco*, 101 F. Supp. 3d at 790. Mercis does not address any of these considerations. Instead, Mercis broadly alleges that the MIFFY Trademarks have been featured in books, television series, and movies that are sold and aired worldwide. Also, Mercis alleges that it "has and continues to widely market and promote the MIFFY Trademarks." Doc. 1 ¶ 8. Absent more detailed allegations about Mercis' area and manner of use of the MIFFY Trademarks, the Court finds that this factor does not support a likelihood of confusion.

*Factor 4*: Generally, courts considering this factor assume that "[t]he more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001). When customers use a lesser degree of care, this supports a finding of a likelihood of confusion. *Sorensen*, 792 F.3d at 731. In its complaint, Mercis included a screenshot of and a link to a website, https://miffytown.com/toys, and alleged that Mercis is the official source of MIFFY products. Doc. 1 ¶ 7. However, the screenshot only shows toys, and the complaint does not include any additional allegations concerning the

accessibility or cost of Mercis' products. Because Mercis' complaint does not include allegations that address this factor, the Court finds that this factor does not support a likelihood of confusion.

*Factor 5*: For the strength of the plaintiff's mark, "courts examine 'the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source.'" *KJ Korea*, 66 F. Supp. 3d at 1016 (citation omitted). "A mark's strength ordinarily corresponds to its economic and marketing strength." *Sorensen*, 792 F.3d at 731. Mercis alleges that the MIFFY Trademarks have been "the subject of substantial and continuous marketing and promotion by [Mercis]. [Mercis] has and continues to widely market and promote the MIFFY Trademarks and Copyright in the industry and to consumers." Doc. 1 ¶ 8. Mercis also alleges that "products bearing the MIFFY Trademarks and Copyright are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from [Mercis]," *id.* ¶ 11, and "[c]onsumers have come to expect the highest quality from [Mercis'] products provided under the MIFFY Trademarks," *id.* ¶ 24. These allegations, which indicate continuous (and economically successful) use of the MIFFY Trademark for several years, distinctiveness based on quality and reputation, and substantial efforts to maintain recognition and awareness of the brand through advertising and promotion, suggest that the fifth factor weighs in favor of likelihood of confusion. *See Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000) (finding that the plaintiff's use of its mark for six years and its good reputation warranted weighing the fifth factor in favor of a likelihood of confusion); *Mighty Deer Lick*, 2020 WL 635904, at *7 (allegation that the plaintiff's mark was "widely recognized as being associated with [the plaintiff] and high-quality goods" satisfied the fifth factor).

*Factor 6*: The Moving Defendants contend that Mercis has failed to allege actual confusion, which Mercis does not refute. Nonetheless, "the absence of factual allegations demonstrating actual confusion is not dispositive," *KJ Korea*, 66 F. Supp. 3d at 1016, because "evidence of actual confusion . . . is not required to prove that a likelihood of confusion exists," *CAE*, 267 F.3d at 685.

*Factor 7*: This last factor primarily looks to whether "the defendants are attempting to 'pass off' their products as having come from the plaintiff." *Packman*, 267 F.3d at 644. Mercis alleges that the Moving Defendants' "willful, intentional, and unauthorized use of the MIFFY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public." Doc. 1 ¶ 26. These allegations address the Moving Defendants' intent, but they "do not weigh particularly heavily in favor of or against likelihood of confusion" because they are conclusory and not supported by factual allegations from which the Court can reasonably infer the alleged intent and knowledge. *See Top Tobacco*, 101 F. Supp. 3d at 791–92 (finding that unsupported allegations that the defendant was intentionally using its mark "to profit off of the goodwill and consumer recognition of" the plaintiff's trademark and "deliberately and willfully used [its] mark . . . to pass its tobacco product off as those of" the plaintiff are "not especially strong" (citations omitted)).

In sum, Mercis has alleged sufficient facts pertaining to only two of the seven likelihood of confusion factors: the first and fifth factors. By doing so, Mercis has not raised the possibility of likelihood of confusion "above a speculative level," *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019) (citation omitted), especially given the fact-intensive nature of weighing the different factors, *see Packman*, 267 F.3d at 643; *Top Tobacco*, 101 F. Supp. 3d at 790.

Therefore, the Court dismisses the trademark, false designation of origin, and deceptive trade practices claims (Counts I, II, and IV).

### B.     Copyright Claim (Count III)

"A plaintiff alleging copyright infringement must establish two elements: '(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Because the Moving Defendants do not challenge Mercis' copyright ownership, the Court focuses its analysis on the second element.

The Court may infer copying from allegations that the Moving Defendants had an opportunity to copy the original, referred to as "access," and that the works in question are "substantially similar" to each other, or, in other words, "that the two works share enough unique features to give rise to a breach of the duty not to copy another's work."[4]  *Peters v. West*, 692 F.3d 629, 633–34 (7th Cir. 2012).  Courts determine whether two works are substantially similar by applying the "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 509 (7th Cir. 1994) (quoting *Atari, Inc. v. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)).  That is, courts look to whether the ordinary observer would tend to overlook the disparities, unless setting out to detect them, and to regard the aesthetic appeal of the two works as the same.  *Id.*

---

[4] The Moving Defendants do not challenge the access element of copying, and so the Court does not address that here.

16

Courts may find that a copyright is entitled to only "thin" copyright protection. *See Feist*, 499 U.S. at 349 (recognizing that the thin copyright in a factual compilation means that, "[n]otwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement"). Important here, the depiction of an animal requires "a copyright holder [to] prove substantial similarity to those few aspects of the work that are expression not required by the idea." *Wildlife Exp. Corp.*, 18 F.3d at 508. "[A]s a work embodies more in the way of particularized expression, it moves away from" the necessary elements "and receives broader copyright protection." *Id.* (citation omitted). "At the other end of the spectrum, creative complex artistic expressions are more fully protected." *Id*.

The Moving Defendants argue that Mercis has not sufficiently alleged that the Moving Defendants copied the original product because the MIFFY Copyright is "thin" with only two protectable elements, from which the Counterfeit Products differ. Specifically, the Moving Defendants contend that the MIFFY Copyright's bunny's outfit and "x" shaped mouth are the only unique features not attributable to all cartoon bunnies. And, when comparing these protectable elements between the works, the Moving Defendants argue that the works are not substantially similar because (1) the Counterfeit Products only depict a bunny's head, while the MIFFY Copyright includes a bunny's body wearing clothes; and (2) the Counterfeit Products' bunnies' "x" mouth shapes and locations differ from the MIFFY Copyright's bunny. Mercis responds that all elements of the Counterfeit Products' bunny and the MIFFY Copyright's bunny are "nearly identical," both having oval heads with extending vertical ears, two large black dots

17

for eyes, and a distinct "x" for a mouth. Doc. 66 at 12. Below are images of the MIFFY Copyright and the Counterfeit Products:

| **MIFFY Copyright** | **Counterfeit Products** |
|---|---|






Doc. 1-2 at 4; Doc. 59-1 at 10–11.

The MIFFY Copyright is a simple cartoon sketch of a bunny with almost no detail. The images the Moving Defendants employ are similar, insofar as cartoon depictions of bunnies will, of necessity, always be similar. There is little copying of the MIFFY Copyright's bunny, aside from what is necessary to depict a cartoon bunny in the first place. In fact, the Counterfeit Products' bunnies do not portray the most unique element of the MIFFY Copyright—the bunny's body and outfit. While both the MIFFY Copyright's bunny and the Counterfeit Products' bunnies have an "x" shaped mouth, that is the only protectable element that is similar between the two. In the context of the "thin copyright", that is not enough for the Court to find that the two bunnies are substantially similar. *See Hangzhou Aoshuang E-Com. Co. v. 008fashion*, No. 19 C 4565, 2020 WL 11401648, at *14-15 (N.D. Ill. Aug. 10, 2020) (finding

two "childlike" images of giraffes are not substantially similar because, while the defendants' images were similar to plaintiff's copyright, "there is little creativity or originality to [the copyright] that is not a necessary element of a giraffe"). Accordingly, Mercis has not made out a *prima facie* case of copyright infringement, and the Court dismisses Mercis' copyright claim against the Moving Defendants.

## III. Motion to Vacate the Preliminary Injunction

TROs and preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). The party seeking such relief must show: (1) it has some likelihood of success on the merits; (2) there is no adequate remedy at law; and (3) it will suffer irreparable harm if the court denies relief. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). If the moving party meets this threshold showing, the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *Id.* (citation omitted) (internal quotation marks omitted). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Laby's v Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009). The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily

19

in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364. Finally, the Court considers whether the injunction is in the public interest, which includes taking into account any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

Although the Court has already granted Mercis a preliminary injunction, it did so on an *ex parte* basis under circumstances that closely resembled a TRO, and without the benefit of adversarial briefing. Thus, Mercis bears the burden of persuading the Court that it should not disturb the injunction. *See Jiaxing Zichi Trade Co. v. Yang*, No. 21 C 973, 2021 WL 4498654, at *3 n.3 (N.D. Ill. Aug. 19, 2021) (citing 42 Am. Jur. 2d Injunctions § 291 ("[W]hen a temporary injunction is issued under circumstances resembling a temporary restraining order, the burden of proof may be on the party seeking the order.")).

Ordinarily, "[p]laintiffs can only establish a likelihood of success on the merits of their [ ] claim"—a core threshold issue—"if that claim survives [a] motion to dismiss." *Citizens for Resp. & Ethics in Wash. (CREW) v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 44 (D.D.C. 2019). There are a handful of rare circumstances in which courts have denied motions to vacate a preliminary injunction despite granting without prejudice a simultaneous motion to dismiss. *See*, *e.g.*, *Sharp Healthcare v. Leavitt*, No. 08 CV 0170, 2009 WL 790113, at *6 (S.D. Cal. Mar. 25, 2009) (dismissing plaintiffs' complaint as moot but preserving a preliminary injunction because plaintiffs' desire to amend their complaint creates the possibility that they will succeed on the merits and because the "possible harm to the plaintiffs is very great"). But Mercis does not argue that such an unusual remedy would be appropriate here. The Court therefore grants the Moving Defendants' motion to vacate the preliminary injunction because Plaintiff has failed to establish that it is likely to succeed on the merits of its claims.

20

## CONCLUSION

For the foregoing reasons, the Court grants the Moving Defendants' motion to dismiss [59]. The Court dismisses Mercis' complaint as to the Moving Defendants without prejudice. The Court also grants the Moving Defendants' motion to vacate the preliminary injunction [47]. The Court vacates the preliminary injunction as it relates to the Moving Defendants.

Dated: February 6, 2025

_____
SARA L. ELLIS
United States District Judge